**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

_____

|  |  |  |
|---|---|---|
| M.B., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:16-cv-02063 |
| DR. WENDY LONG, in her official | ) | |
| capacity as Deputy Commissioner of | ) | Judge Campbell |
| the Tennessee Department of Finance & | ) | Magistrate Judge Newbern |
| Administration and Director of the | ) | |
| Bureau of TennCare, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

_____

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF THEIR MOTION TO DISMISS

September 27, 2016

Herbert H. Slatery III
Attorney General and Reporter

Linda A. Ross, TN BPR #4161
Senior Deputy Attorney General
Carolyn E. Reed, TN BPR #022248
Senior Counsel

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202
(615) 741-1771

Michael W. Kirk
Nicole J. Moss

COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
mkirk@cooperkirk.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

STATEMENT .......................................................................................................................... 1

I.      REGULATORY BACKGROUND ................................................................................ 1

II.     PLAINTIFF'S FACTUAL ALLEGATIONS ................................................................ 2

ARGUMENT .......................................................................................................................... 4

I.      PLAINTIFF'S MEDICAID ACT AND DUE PROCESS
        CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT. .................................. 4

II.     PLAINTIFF LACKS STANDING TO SEEK PROSPECTIVE
        RELIEF CHALLENGING FUTURE APPLICATION OF
        THE STATE'S VALID FACTUAL DISPUTE REGULATIONS. .................................... 6

III.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATION OF THE
        MEDICAID ACT'S "REASONABLE OPPORTUNITY TO APPLY" PROVISION. ...... 8

IV.     PLAINTIFF'S CHALLENGES TO THE STATE'S VALID
        FACTUAL DISPUTE RULES FAIL AS A MATTER OF LAW. ................................... 10

V.      BECAUSE THE STATE PROVIDES AN ADEQUATE POST-DEPRIVATION
        REMEDY, PLAINTIFF CANNOT MAINTAIN HER DUE PROCESS CLAIM. .......... 10

VI.     PLAINTIFF'S ADA AND REHABILITATION ACT CLAIMS
        FAIL AS A MATTER OF LAW FOR MULTIPLE REASONS. ................................... 13

CONCLUSION ...................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Page**

*Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015) ............................................13, 14, 18

*Arkansas Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268 (2006) ...............................1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................9

*Atkins v. Parker*, 472 U.S. 115 (1985) ...........................................................................13

*Banas v. Dempsey*, 742 F.2d 277 (6th Cir. 1984) .......................................................5, 6

*Board of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267 (7th Cir. 2007)..............18

*Brown v. University of Cincinnati*, 2005 WL 1324885 (S.D. Ohio June 3, 2005) ......................19

*Campbell v. Board of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162 (6th Cir. 2003) ..............18

*Caremark, Inc. v. Goetz*, 480 F.3d 779 (6th Cir. 2007) ..................................................1

*Carney v. University of Akron*, 2016 WL 4036726 (N.D. Ohio July 28, 2016) ..........................19

*Carter v. Orleans Parish Pub. Schs.*, 725 F.2d 261 (5th Cir. 1984)......................................18

*City of W. Covina v. Perkins*, 525 U.S. 234 (1999) .....................................................13

*Clark v. Boyd Tunica, Inc.*, 2016 WL 853529 (N.D. Miss. Mar. 1, 2016) ..................................15

*Collier v. Austin Peay State Univ.*, 616 F. Supp. 2d 760 (M.D. Tenn. 2009)................................14

*Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995) ...............................................11, 13

*Daily Servs., LLC v. Valentino*, 756 F.3d 893 (6th Cir. 2014) ..............................................10, 11

*Daniels v. Williams*, 474 U.S. 327 (1986) ...........................................................................9

*Delano-Pyle v. Victoria Cty.*, 302 F.3d 567 (5th Cir. 2002)..............................................18

*Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001)...............................................18

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005).......................................................................6

*Ex parte Young*, 209 U.S. 123 (1908).................................................................................5

*Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998) ..............................................18

*Fitch v. Kentucky State Police*, 2010 WL 5090323 (E.D. Ky. Dec. 8, 2010)................................17

*Frank v. University of Toledo*, 621 F. Supp. 2d 475 (N.D. Ohio 2007) ......................................19

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001) ..........................18

*Gean v. Hattaway*, 330 F.3d 758 (6th Cir. 2003) .......................................................5, 6

*Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274 (1998) ...................................17

*Gohl v. Livonia Pub. Schs. Sch. Dist.*, -- F.3d --,
    2016 WL 4698279 (6th Cir. Sept. 8, 2016) ...........................................................16

*Green v. Mansour*, 474 U.S. 64 (1985)...............................................................................5

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) ......................................2

Case 3:16-cv-02063   Document 22   Filed 09/27/16   Page 3 of 27 PageID #: 65

*Hughes v. Vanderbilt Univ.*, 215 F.3d 543 (6th Cir. 2000) ............................................................8

*In re Omnicare, Inc. Secs. Litig.*, 769 F.3d 455 (6th Cir. 2014) .................................................1, 2

*In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009)...................................9

*Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432 (6th Cir. 1998) ..............................19

*Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274 (1st Cir. 2006).......................................19

*Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012)...........................................13

*Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012)..........................................17

*Manuel v. City of Bangor*, 2009 WL 3398489 (D. Me. Oct. 21, 2009).........................................17

*McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453 (6th Cir. 1997)................20

*Mertik v. Blalock*, 983 F.2d 1353 (6th Cir. 1993) .......................................................................11

*New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*,
     336 F.3d 495 (6th Cir. 2003) ................................................................................................1

*Nieves-Márquez v. Puerto Rico*, 353 F.3d 108 (1st Cir. 2003)....................................................18

*Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990) .............................................................9

*Olim v. Wakinekona*, 461 U.S. 238 (1983) .................................................................................12

*Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823 (4th Cir. 1994) ...............................................18

*Papasan v. Allain*, 478 U.S. 265 (1986) .......................................................................................5

*Parratt v. Taylor*, 451 U.S. 527 (1981) ......................................................................................11

*Payne v. O'Neil*, 73 F. App'x 144 (6th Cir. 2003).......................................................................15

*Phillips v. McCollom*, 788 F.3d 650 (6th Cir. 2015) ...................................................................12

*Powers v. MJB Acquisition Corp.*, 184 F.3d 1147 (10th Cir. 1999)..............................................18

*Project Relief, Inc. v. Metropolitan Nashville Bd. of Pub. Educ.*,
     947 F. Supp. 2d 868 (M.D. Tenn. 2013).............................................................................12

*R.K. ex rel. J.K. v. Board of Educ. of Scott Cty.*, 637 F. App'x 922 (6th Cir. 2016)....................18

*Rosen v. Goetz*, 410 F.3d 919 (6th Cir. 2005)........................................................................10, 12

*Rosen v. Tennessee Comm'r of Fin. & Admin.*, 288 F.3d 918 (6th Cir. 2002)............................7, 8

*Roush v. Weastec, Inc.*, 96 F.3d 840 (6th Cir. 1996) ...................................................................15

*S & M Brands, Inc. v. Cooper*, 527 F.3d 500 (6th Cir. 2008)........................................................5

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248 (3d Cir. 2013) ............................18

*S.S. v. Eastern Ky. Univ.*, 431 F. Supp. 2d 718, 730 (E.D. Ky. 2006)....................................16, 17

*S.S. v. Eastern Ky. Univ.*, 532 F.3d 445 (6th Cir. 2008) .............................................................13

*Schweiker v. Hansen*, 450 U.S. 785 (1981) ..................................................................................9

- iii -

*Sherrod v. University of Tenn. Health Sci. Ctr.*,
 2013 WL 5306065 (W.D. Tenn. Sept. 20, 2013)...................................................14

*Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193 (D. Conn. 2012).............................15

*Watson v. City of Mason*, 2005 WL 3018690 (S.D. Ohio Nov. 9, 2005) ......................................19

*Wheat v. Columbus Bd. of Educ., Columbus Pub. Schs.*, 644 F. App'x 427 (6th Cir. 2016) ........19

*White v. United States*, 601 F.3d 545 (6th Cir. 2010) ...................................................................8

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .........................................................................7, 8

*Wood v. President & Trs. of Spring Hill Coll.*, 978 F.2d 1214 (11th Cir. 1992).........................18

*Zinermon v. Burch*, 494 U.S. 113 (1990)...................................................................................11

## Statutes, Administrative Materials, Rule, and State Materials

29 U.S.C.

    § 705(20)(B)......................................................................................................14

    § 794(a) ..................................................................................................4, 13, 14, 17

42 U.S.C.

    § 1983.........................................................................................................6, 8

    § 12102(1)(A) ...................................................................................................14

    § 12132.............................................................................................................16

    § 12133............................................................................................4, 13, 14, 17

    § 1396a(a)(8)...................................................................................................4, 8

    § 1396a(a)(3)..................................................................................................4, 10

    § 1396a(e)(14)....................................................................................................1

    § 18041(c) ...........................................................................................................1

    § 18083(a) ...........................................................................................................1

    Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 ...................1

42 C.F.R.

    § 431.220(b)......................................................................................................10

    § 435.907(a) .........................................................................................................2

FED. R. EVID. 201(b) .......................................................................................................1

TENN. CODE ANN.

    § 4-5-322 ...............................................................................................7, 11, 12, 13

    § 28-3-104(a) ........................................................................................................8

TENN. COMP. R. & REGS.

    § 1200-13-19 .......................................................................................................11

§ 1200-13-19-.02(6) .................................................................................................. 7

§ 1200-13-19-.02(33) ............................................................................................. 3, 7

§ 1200-13-19-.05(3) .................................................................................................. 7

§ 1200-13-19-.07(5) .................................................................................................. 7

**<u>Other</u>**

Tennessee Mitigation Plan – April 2016 Update, *available at* https://goo.gl/kKQUtg .............. 1, 2

Case 3:16-cv-02063   Document 22   Filed 09/27/16   Page 6 of 27 PageID #: 68

Defendants (the "State") respectfully submit this Memorandum in support of their motion to dismiss.

**STATEMENT**

## I.    <u>REGULATORY BACKGROUND</u>

This case involves the federal Medicaid program, known in Tennessee as TennCare, which was created in 1965 under Title XIX of the Social Security Act to "pay[ ] for medical and health-related assistance for certain low-income individuals and families." *Caremark, Inc. v. Goetz*, 480 F.3d 779, 783 (6th Cir. 2007). The federal Centers for Medicare and Medicaid Services ("CMS") and the states work together to administer the program. *See, e.g.*, *Arkansas Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006). Following the enactment of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (hereinafter "ACA"), CMS's responsibilities with respect to the Medicaid program grew to include the establishment and operation of a federal Exchange or Marketplace ("FFM") that, among other responsibilities, must accept and adjudicate applications for enrollment into Medicaid. *See* 42 U.S.C. §§ 18083(a), 18041(c). The ACA requires the use of a new methodology, known as Modified Adjusted Gross Income ("MAGI"), for calculating income and financial eligibility for most categories of Medicaid. *See* 42 U.S.C. § 1396a(e)(14).

In Tennessee, CMS has approved a process whereby virtually all TennCare applications requiring MAGI eligibility determinations must be submitted for adjudication to the FFM. *See* Tennessee Mitigation Plan – April 2016 Update (hereinafter "Mitigation Plan") *available at* https://goo.gl/kKQUtg and attached hereto as Exhibit A;[1] *see also* Complaint ¶ 25 (Aug. 2, 2016)

---

[1] The Court may take judicial notice of the CMS approved Mitigation Plan because it is a public record. *See, e.g.*, *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466–67 (6th Cir. 2014);

D.E. 1 ("Complaint") ("Tennessee officials contracted with the FFM to determine the TennCare eligibility of certain categories of applicants.").

Individuals may apply for TennCare through the FFM by telephone, mail, and via the internet. *See* 42 C.F.R. § 435.907(a); *see also* Mitigation Plan at 3. In addition, in-person assistance with applications is available at every Tennessee Department of Human Services ("DHS") county office, and in-home assistance for disabled individuals is available through Tennessee's Area Agencies on Aging and Disability ("AAAD"). *See Do you need help applying for TennCare?* attached hereto as Exhibit B;[2] *see also* Mitigation Plan at 5.

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS

According to the Complaint,[3] Plaintiff fell ill in March 2015 and was hospitalized on March 20, 2015. Complaint ¶ 31. By her third day in the hospital, Plaintiff had fallen into a coma that left her unable to communicate, and she did not regain consciousness until late April 2015 following successful surgery. *Id.* ¶¶ 31, 35. At the time she fell into the coma, Plaintiff was uninsured, and she had not applied for TennCare coverage. *Id.* ¶ 1.

---

*New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."); *see also* FED. R. EVID. 201(b).

[2] This document was referenced in the Complaint. *See* Complaint ¶ 40. The Sixth Circuit has held that "that if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Omnicare Securities Litigation*, 769 F.3d at 466.

[3] For purposes of this motion to dismiss only, the State assumes that the factual allegations in the Complaint are true. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

- 2 -

Plaintiff's husband first attempted to apply for TennCare on her behalf on April 7, 2015, several weeks after she had fallen into the coma, by visiting the Robertson County DHS office. *Id.* ¶ 41. While acknowledging the State's policy that county DHS offices will assist TennCare applicants, *id.* ¶ 40, Plaintiff alleges that the policy was not followed and her husband was told "DHS no longer assists with TennCare and the office would not take his application for medical assistance." *Id.* ¶ 41. As instructed by the DHS worker, Plaintiff's husband then called the FFM to apply, but "was erroneously told by the FFM representative that he would not be allowed to file an application on his wife's behalf without her consent." *Id.* ¶ 42. The FFM representative allegedly maintained her refusal to accept an application for TennCare coverage even after Plaintiff's husband explained that Plaintiff was in a coma and thus unable to give consent. *Id.* Plaintiff's husband made no other attempts to apply for Medicaid on her behalf because he believed that it would be futile. *Id.* ¶ 43.

Plaintiff applied for TennCare on May 27, 2015 by contacting the FFM, *id.* ¶ 52, and her application was approved with a May 27, 2015 effective date of coverage. *Id.* ¶ 53. On July 13, 2015, Plaintiff contacted TennCare's call center, the Tennessee Health Connection, to initiate an appeal seeking to amend the effective date of coverage back to April 7, 2015. *Id.* ¶ 55. On August 17, 2015, after receiving notice and an opportunity to submit additional information, Plaintiff's administrative appeal was dismissed for failure to raise a valid factual dispute. *Id.* ¶¶ 62–67.[4] Plaintiff sought to re-open the appeal and initiated a second administrative appeal, which also was closed for lack of a valid factual dispute after Plaintiff was given notice and an

---

[4] A valid factual dispute is defined as "[a] dispute that, if resolved in favor of the appellant, would prevent the state from taking the action that is the subject of the appeal." TENN. COMP. R. & REGS. § 1200-13-19-.02(33).

opportunity to submit additional information. *Id.* ¶¶ 68–74. Plaintiff filed several additional administrative appeals seeking to challenge the effective date of her coverage, but all were dismissed as untimely. *See id.* ¶¶ 75–79. Plaintiff then sought review in Chancery Court, but the Court dismissed four of her five claims as untimely under state law and Plaintiff voluntarily dismissed her remaining claim. *Id.* ¶¶ 82–84.

Plaintiff's Complaint in this Court asserts five causes of action. First, Plaintiff claims that the failure to permit her husband to apply on her behalf for TennCare coverage, in person or over the telephone, on or about April 7, 2015 violated her rights under 42 U.S.C. § 1396a(a)(8). *Id.* ¶¶ 85–89 (Count One). Second, Plaintiff claims that application of the valid factual dispute rules to dismiss her administrative appeals violated her rights under 42 U.S.C. § 1396a(a)(3), *id.* ¶¶ 90–93 (Count Two), and the Due Process Clause, *id.* ¶¶ 94–97 (Count Three). Finally, Plaintiff claims that the failure to permit her husband to apply for TennCare coverage on her behalf while she was in a coma and the application of TennCare's valid factual dispute rules to dismiss her administrative appeals violated her rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12133, *id.* ¶¶ 98–102 (Count Four), and under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), *id.* ¶¶ 103–07 (Count Five). Plaintiff seeks compensatory damages, a declaration that her rights were violated by the State's past acts, and prospective declaratory and injunctive relief barring application of the valid factual dispute regulations to Plaintiff in the future. *Id.* ¶¶ A–F (Prayer for Relief).

## ARGUMENT

## I.     PLAINTIFF'S MEDICAID ACT AND DUE PROCESS <br> CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT.

Counts One, Two, and Three must be dismissed for lack of jurisdiction because the State's sovereign immunity deprives the Court of jurisdiction to hear them. All three claims seek

- 4 -

relief for alleged past violations. Count One asserts that Plaintiff was injured by the State's alleged refusal to timely accept and process Medicaid applications on her behalf in April 2015 while Counts Two and Three assert that the State applied its valid factual dispute rules to Plaintiff's now-closed administrative appeals. Plaintiff acknowledges, however, that she obtained TennCare eligibility effective May 27, 2015, Complaint ¶¶ 52–53, and that proceedings on the administrative appeals have been completed, *id.* ¶¶ 67, 74, 76, 79, 82–83. Accordingly, these claims are based entirely on past conduct related to previous application and appeal attempts and are barred by the Eleventh Amendment.[5]

Eleventh Amendment immunity, premised on the fundamental doctrine of sovereign immunity, is a constitutional limitation on the federal judicial power established in Article III of the Constitution. *Green v. Mansour*, 474 U.S. 64, 68 (1985). The limited exception to Eleventh Amendment immunity first announced in *Ex parte Young*, 209 U.S. 123 (1908), has no application to alleged violations that are not ongoing but occurred "at one time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986); *see also Green*, 474 U.S. at 68 (*Young* doctrine does not extend to claims for retrospective relief or to compensatory or deterrence interests). The *Young* exception does not apply to claims for retrospective relief or nominally prospective relief addressing only past conduct. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008) (*Young* exception does not authorize "relief for a past, one-time decision . . . that purportedly violated . . . federal constitutional rights"); *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003); *Banas v. Dempsey*, 742 F.2d 277, 288 (6th Cir. 1984) (declaration

---

[5] As explained below, Plaintiff lacks standing to advance a claim challenging prospective application of the valid factual dispute rules because the possibility that she might someday be again subject to them is completely speculative.

- 5 -

"finding, in retrospect, that certain activities of [the State] previously violated plaintiffs' rights under federal law" is not prospective in nature and not covered by the *Young* exception).

In particular, the Eleventh Amendment bars Plaintiff's claims for compensatory damages pursuant to 42 U.S.C. § 1983. "[T]he requested relief targets one of the most essential factors in the sovereign-immunity inquiry: state treasury liability." *Ernst v. Rising*, 427 F.3d 351, 371 (6th Cir. 2005). The Sixth Circuit has unequivocally held that "direct requests for monetary relief . . . do not fall within the *Ex parte Young* exception," and "the Eleventh Amendment does not permit a prospective injunction that amounts to a 'direct monetary award.' " *Id*. at 369–70.

Plaintiff's claims that the State did not timely accept and process her TennCare application (Count One) and that the State wrongfully applied its valid factual dispute rules to her administrative appeal (Counts Two and Three) do not concern alleged ongoing violations of federal law. Plaintiff does not contend that the State still is refusing to accept and process her TennCare application—she is enrolled in TennCare. She likewise does not claim that the State is continuing to apply its valid factual dispute rules—her administrative appeals have all been closed. Counts One, Two, and Three are thus "based entirely upon past acts and not continuing conduct that, if stopped, would provide a remedy" to her. *Gean*, 330 F.3d at 776. They therefore must be dismissed for lack of jurisdiction based on the State's Eleventh Amendment immunity.

## II. PLAINTIFF LACKS STANDING TO SEEK PROSPECTIVE RELIEF CHALLENGING FUTURE APPLICATION OF THE STATE'S VALID FACTUAL DISPUTE REGULATIONS.

In Counts Two and Three, Plaintiff also seeks prospective declaratory and injunctive relief invalidating the State's valid factual dispute regulations. Plaintiff asserts that these rules "continue to apply to the Plaintiff, who like all TennCare enrollees, must undergo an annual redetermination of eligibility." Complaint ¶¶ 92, 96. The most basic requirement for standing is

- 6 -

that a plaintiff must set forth an "injury-in-fact"—"a concrete and particularized, actual, or imminent injury that will befall" her as a result of the challenged rule or conduct. *Rosen v. Tennessee Comm'r of Fin. & Admin.*, 288 F.3d 918, 927–28 (6th Cir. 2002) (*Rosen I*). "That injury . . . must be concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Plaintiff lacks standing to prospectively challenge the valid factual dispute rules because her suggestion that she might someday be subject to them is entirely speculative.

The challenged rules—TENN. COMP. R. & REGS. §§ 1200-13-19-.02(6), 1200-13-19-.05(3), and 1200-13-19-.07(5)—set forth a procedure that applies in TennCare eligibility appeals. They specify that hearings will not be granted for appeals that do not raise a valid factual dispute. Plaintiff is enrolled in TennCare and has no pending TennCare appeal. She has not alleged and cannot establish that she faces any imminent threat of injury from the rules. The allegation that she, like all TennCare enrollees, must undergo an annual redetermination of eligibility does not begin to establish an imminent threat of injury. The rules govern only administrative appeals and therefore will not apply to Plaintiff during the redetermination process per se. Only if (i) Plaintiff is found to be no longer eligible for TennCare, (ii) she appeals that determination, and (iii) she fails, in her appeal, to raise a factual dispute that requires resolution at hearing, will the valid factual dispute rules apply to her. *See* TENN. COMP. R. & REGS. § 1200-13-19-.02(33).[6]

_____

[6] Even then, if Plaintiff again believes that she is improperly denied a fair hearing, she may obtain judicial review from the Tennessee Chancery Court, which may order that a hearing be granted, if it concludes that her complaint that she was improperly denied a hearing has merit. TENN. CODE ANN. § 4-5-322. Plaintiff did not timely seek such review regarding her past administrative appeals. Complaint ¶ 83.

- 7 -

This speculative chain of events is conjectural and hypothetical and does not come close to establishing an injury-in-fact within the meaning of Article III. *White v. United States*, 601 F.3d 545, 553–54 (6th Cir. 2010); *Rosen I*, 288 F.3d at 929–30. *Cf. Whitmore*, 495 U.S. at 159–60 ("It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case," and "no amount of evidence" can establish imminent injury from future litigation). Accordingly, Counts Two and Three must be dismissed to the extent they seek prospective declaratory and injunctive relief invalidating the valid factual dispute rules.

## III. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATION OF THE MEDICAID ACT'S "REASONABLE OPPORTUNITY TO APPLY" PROVISION.

In Count One, Plaintiff claims, pursuant to 42 U.S.C. § 1983, that the State violated the "reasonable opportunity to apply" requirement set forth in Section 1396a(a)(8) of the Medicaid Act (Count One). This claim is based entirely upon her allegations that her husband received erroneous advice on two occasions in April 2015 regarding his ability to apply for Medicaid on Plaintiff's behalf—once from a worker at the Robertson County Department of Human Services and once from an operator at the FFM. *See* Complaint ¶¶ 40–42. As an initial matter, this action was not commenced until August 2, 2016, more than a year after it accrued in April 2015. The one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a) governs Section 1983 actions arising in Tennessee. *E.g.*, *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000). Accordingly, Count One is barred by the statute of limitations and must be dismissed for that reason.[7]

Even if Count One was timely, it must be dismissed because it does not state a plausible claim for relief under the Medicaid Act. In order to survive a motion to dismiss, a complaint

---

[7] As previously explained, Count One also is barred by the Eleventh Amendment in that it is based on past conduct.

- 8 -

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In this case, all agree that established federal and state policy clearly does allow an authorized representative to apply on behalf of another individual. *See* Complaint ¶¶ 20, 40. Thus, the allegations in the Complaint at best establish only that worker error occurred, *i.e.*, that workers erred in not accepting the application that Plaintiff's husband attempted to submit on her behalf on April 7. Plaintiff admits that her husband did not make any further attempts to apply after that date. *Id.* ¶ 43. In other contexts, the United States Supreme Court has clearly established that such worker error is not sufficient to create legal liability. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 415–16, 433 (1990) (erroneous oral and written advice by a government employee did not estop the government from denying benefits not otherwise permitted by law); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligence by an official does not implicate the Due Process Clause); *Schweiker v. Hansen*, 450 U.S. 785, 789–90 (1981) (an erroneous statement by a field worker on whether an application for "mother's insurance benefits" under the Social Security Act was required did not preclude the SSA from requiring an application and providing benefits only from the date of the actual written application).

Even assuming the truth of Plaintiff's allegations, as required in the context of this motion, Plaintiff's factual claims do not plausibly establish that Plaintiff is entitled to relief for the alleged worker errors on April 7. The court "need not accept as true legal conclusions or unwarranted factual inferences and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (citations, quotations, and alterations omitted).

## IV.   PLAINTIFF'S CHALLENGES TO THE STATE'S VALID FACTUAL DISPUTE RULES FAIL AS A MATTER OF LAW.

Counts Two and Three of the Complaint must be dismissed for failure to state a claim because neither Section 1396a(a)(3) of the Medicaid Act nor the Due Process Clause of the Fourteenth Amendment prohibit the State from applying its valid factual dispute rules and limiting evidentiary hearings to administrative appeals involving a disputed fact that could alter the outcome.  The State's procedure is authorized by the federal Medicaid regulations, *see* 42 C.F.R. § 431.220(b), and the Sixth Circuit has held that TennCare's valid factual dispute procedure complies with both the Medicaid statute and regulations and the Due Process Clause. *See Rosen v. Goetz*, 410 F.3d 919, 926–29 (6th Cir. 2005) (*Rosen II*).

In *Rosen II*, the Sixth Circuit emphasized that "CMS . . . has approved the State's policies as fully compliant with its regulations, a determination to which we owe 'substantial deference.' " *Id*. at 927.  And the Court of Appeals squarely rejected a due process challenge to the valid factual dispute regulations, explaining that for " 'the hearing mandated by the Due Process Clause to serve any useful purpose, there must be some factual dispute . . . which has some significant bearing' " on the issue to be decided.  *Id*. at 928 (alteration omitted) (quoting *Codd v. Velger*, 429 U.S. 624, 627 (1977)).  In short, *Rosen II* forecloses Plaintiff's challenge to the State's valid factual dispute regulations as a matter of law.

## V.   BECAUSE THE STATE PROVIDES AN ADEQUATE POST-DEPRIVATION REMEDY, PLAINTIFF CANNOT MAINTAIN HER DUE PROCESS CLAIM.

Plaintiff's due process claim fails as a matter of law for an additional reason:  the State provides an adequate post-deprivation remedy.  It is settled that "[c]ourts may dismiss a procedural due process claim if the state provides an adequate postdeprivation remedy and '(1) the deprivation was unpredictable or "random"; (2) predeprivation process was impossible or

- 10 -

impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.' " *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 907 (6th Cir. 2014) (quoting *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (per curiam)). This principle, known as the *Parratt* doctrine, *see Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986), is founded on the recognition that states "cannot be required constitutionally to do the impossible" and provide pre-deprivation process when the loss complained of results from unpredictable or otherwise random acts of state employees. *Zinermon v. Burch*, 494 U.S. 113, 129 (1990).

Plaintiff's due process claim is predicated on the allegation that she was deprived of property—specifically, her interest in having her TennCare coverage take effect on the date her husband attempted to apply on her behalf, rather than on the later date when she applied—as a result of the unpredictable and unauthorized actions by government employees (i.e., the DHS office's alleged refusal to provide in person assistance to Plaintiff's husband, and the FFM representative's alleged refusal to accept a TennCare application from him on Plaintiff's behalf). Under the *Parratt* doctrine, "a procedural due process claim will not be stated unless the plaintiff pleads and proves that [her] available state remedies are inadequate to redress the wrong." *Copeland*, 57 F.3d at 479. The inquiry "is limited to the adequacy of post-deprivation remedies provided by the state, and the burden is on the plaintiff to demonstrate the inadequacy of those remedies." *Mertik v. Blalock*, 983 F.2d 1353, 1364 (6th Cir. 1993).

Plaintiff has not met her burden of demonstrating that the State's post-deprivation remedies were inadequate. The available remedies include not only the TennCare administrative appeal process detailed in TennCare rules, TENN. COMP. R. & REGS. § 1200-13-19, but also the state judicial review process that applies to such administrative appeals, TENN. CODE ANN. § 4-5-

- 11 -

322. *See Project Relief, Inc. v. Metropolitan Nashville Bd. of Pub. Educ.*, 947 F. Supp. 2d 868, 877 (M.D. Tenn. 2013) (noting that the post-deprivation remedies that must be considered for purposes of the *Parratt* doctrine include "the state's judicial process for the correction of board and agency errors"). The State's judicial review processes provide a constitutionally adequate post-deprivation remedy; Plaintiff does not contend otherwise.

Plaintiff's complaint that the State did not conduct a hearing regarding her effective date appeals, and that the State's administrative valid factual dispute provisions violate due process, cannot be considered in a vacuum. "[T]he Supreme Court has rejected the notion that an interest in process itself warrants process." *Phillips v. McCollom*, 788 F.3d 650, 653 (6th Cir. 2015). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Thus, even assuming that Plaintiff's challenge to the valid factual dispute regulations had merit notwithstanding *Rosen II*, the State's failure to provide a hearing regarding the effective date does not itself suffice to state a due process claim. *Phillips*, 788 F.3d at 654. "To rule otherwise" would create a "tail-chasing dilemma" in which the State could "not deprive a person of a hearing without providing him with a hearing." *Id.* at 653–54 (quoting *Levin v. Childers*, 101 F.3d 44, 46 (6th Cir. 1996), *abrogated on other grounds as recognized by Johnson v. City of Detroit*, 446 F.3d 614, 627–28 (6th Cir. 2006)).

Moreover, Plaintiff's complaints about the State's administrative appeal processes are legally insufficient to state a due process claim because the State provides constitutionally adequate post-deprivation remedies through its judicial review processes. Plaintiff has not disputed the availability of those processes nor has she alleged that they are inadequate to

remedy the alleged deprivations in this case.[8]  And any such allegations would be futile because the Sixth Circuit has held that the availability of state judicial review of administrative proceedings "provides an adequate remedy for violations of due process for purposes" of post-deprivation analysis.  *Copeland*, 57 F.3d at 480.  Because Plaintiff has not met her burden of showing that the State's post-deprivation remedies, including the judicial review procedures, are constitutionally inadequate, Count Three must be dismissed.

## VI.    PLAINTIFF'S ADA AND REHABILITATION ACT CLAIMS FAIL AS A MATTER OF LAW FOR MULTIPLE REASONS.

The Complaint alleges that the State violated Title II of the ADA and Section 504 of the Rehabilitation Act "[b]y refusing to accept and process TennCare applications on Plaintiff's behalf; by placing unnecessary and burdensome demands for Plaintiff to access a fair hearing on her eligibility; and by denying her requests for a fair hearing."  Complaint ¶¶ 102, 107.  In order to establish an intentional discrimination claim under Title II or Section 504,[9] Plaintiff must plausibly plead three elements: "(1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability."  *Anderson v. City of Blue Ash*, 798

---

[8] In her factual allegations, Plaintiff complains that the State did not inform her of the right to seek judicial review, and she alleges that state law required that the State provide that information.  Complaint ¶ 77.  But the State's judicial review remedy is detailed in Tennessee statutes.  TENN. CODE ANN. § 4-5-322.  The State was not required to provide individualized notice of these state-law remedies, which are "established by published, generally available state statutes and case law."  *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999).  *See also Atkins v. Parker*, 472 U.S. 115, 130 (1985) ("All citizens are presumptively charged with knowledge of the law.").

[9] Title II of the ADA was modeled on the Rehabilitation Act, and the only difference between the two statutes material to this case is that the Rehabilitation Act includes an even more demanding causation standard.  *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012) (en banc); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008).  Accordingly, the claims may be analyzed together.

- 13 -

F.3d 338, 357 (6th Cir. 2015) (footnote omitted).  Plaintiff's Title II and Section 504 claims fail as a matter of law for multiple, independent reasons.

First, Plaintiff's complaints concerning the failure to accept and process a TennCare application on her behalf in April 2015 are time barred.  "The Sixth Circuit has recognized that the statute of limitations for Tennessee ADA cases is one year."  *Collier v. Austin Peay State Univ.*, 616 F. Supp. 2d 760, 771 (M.D. Tenn. 2009).  The limitations period for Section 504 claims is also one year.  *E.g.*, *Sherrod v. University of Tenn. Health Sci. Ctr.*, 2013 WL 5306065, at *4 (W.D. Tenn. Sept. 20, 2013).  Plaintiff alleges that her husband was turned away from the Robertson County DHS office on April 7, 2015, and the FFM representative told him he could not submit a Medicaid application on her behalf shortly thereafter.  Complaint ¶¶ 41–42.  But Plaintiff did not file this suit until August 2, 2016—more than one year after these events occurred.  Indeed, Plaintiff was actually *enrolled* in TennCare for more than one year by the time she brought suit.  *Id.* ¶ 1 (Plaintiff enrolled as of May 27, 2015).  Accordingly, Counts Four and Five must be dismissed as untimely to the extent they are based on the alleged failure to accept an application on her behalf while she was in a coma.

Second, Plaintiff's complaints concerning the fair hearing process do not state a claim under either Title II or Section 504 because she has not plausibly alleged that she had a disability at the time her administrative appeals were adjudicated.  Under both statutes, "disability" is defined in relevant part as "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A); *see also* 29 U.S.C. § 705(20)(B).  The only impairment alleged in the Complaint that even conceivably constitutes a "disability" is the illness that hospitalized Plaintiff between March 20, 2015 and May 14, 2015, and left her in a coma for part of that time.  Complaint ¶¶ 31, 35, 37.  Plaintiff has not alleged *any* impairment following

- 14 -

her release from the hospital, much less one substantially limiting a major life activity. To the contrary, Plaintiff was able to contact the FFM and apply for medical assistance on May 27, 2015, *id*. ¶ 52, contact TennCare's call center on at least seven occasions to file appeals or follow up on the appeals she had filed, *id*. ¶¶ 55–58, 63–64, 75, respond to requests for information from TennCare, submit numerous emails, medical records, and engage in phone conversations related to her appeals, *id*. ¶¶ 65–66, 69, 71, 73, 78, contact and interact with a AAAD, *id*. ¶ 59, and seek judicial review in Chancery Court of the administrative appeals TennCare had closed. *Id*. ¶ 82.

The Sixth Circuit has held that where, as here, an impairment has been corrected, it "does not constitute a disability within the meaning of the ADA." *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996) (plaintiff's kidney condition was not a disability because "there [was] no evidence that this impairment *presently* substantially limits a major life activity.") (emphasis added); *see also Payne v. O'Neil*, 73 F. App'x 144, 146 (6th Cir. 2003) (although plaintiff was blind in one eye she did not qualify as "an individual with a disability" because her condition no longer prevented her from performing her job, handling her personal affairs, driving and doing house chores); *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 211 (D. Conn. 2012) ("even under the ADAAA's broadened definition of disability short term impairments would still not render a person disabled within the meaning of the statute."); *Clark v. Boyd Tunica, Inc.*, 2016 WL 853529, at *5 (N.D. Miss. Mar. 1, 2016), *appeal docketed*, No. 16-60167 (5th Cir.) (collecting cases where a short-term injury that has healed were found not to constitute a disability under the ADA). Because Plaintiff did not make her first fair hearing request until July 13, 2015, Complaint ¶ 55, months after her impairment had been corrected, Counts Four and

Five must be dismissed for failure to allege that she was disabled to the extent they are based on the fair hearing complaints.

Third, the Complaint fails to plausibly allege that the State acted or failed to act "by reason of" Plaintiff's disability. 42 U.S.C. § 12132. To state a claim under the ADA, Plaintiff must allege "animus toward the disabled that is a but-for cause of the [allegedly] discriminatory behavior." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, -- F.3d --, 2016 WL 4698279, at *6 (6th Cir. Sept. 8, 2016) (affirming summary judgment where Plaintiff failed to present "sufficiently 'significant' evidence of animus"). "The Rehabilitation Act sets the higher bar, requiring plaintiffs to show that the defendant's acts were done '*solely* by reason of' the disability." *Id.* (citation omitted) (emphasis in original).

Plaintiff has not alleged that the State's conduct of the fair hearing process was in any way caused by "animus toward the disabled." To the contrary, Plaintiff acknowledges that she was denied a fair hearing pursuant to the State's valid factual dispute regulations that apply to *all* TennCare appeals without regard to whether the appellant is disabled. Complaint ¶ 92.

Plaintiff's complaint concerning her husband's alleged inability to apply on her behalf also fails to satisfy the ADA's causation standard. Here too, Plaintiff has not alleged any animus against the disabled. To the contrary, the Complaint makes clear that her husband was deterred from applying based on worker error: he was given wrong information by a DHS worker and an FFM representative. *See id.* ¶ 41 (alleging that a DHS worker misinformed the Plaintiff's husband that "DHS no longer assists with TennCare" and directed him to contact the FFM); *id.* ¶ 42 (Plaintiff's husband "was erroneously told by the FFM representative that he would not be allowed to file an application on his wife's behalf without her consent."). But the ADA "prohibits discrimination, not negligence." *S.S. v. Eastern Ky. Univ.*, 431 F. Supp. 2d 718, 730

- 16 -

(E.D. Ky. 2006), *aff'd*, 532 F.3d 445 (6th Cir. 2008).  Accordingly, Counts Four and Five must be dismissed for failure to allege causation.

Fourth, to the extent Plaintiff's ADA and Section 504 claims are based on her complaints concerning her husband's alleged inability to apply on her behalf, they fail to state a claim because they rest upon a theory of vicarious liability—a doctrine that is not available under either statute.  In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), the Supreme Court held that Title IX of the Education Amendments of 1972 does not "allow recovery in damages where liability rests solely on principles of vicarious liability or constructive notice."  *Id.* at 288.  Courts have subsequently held that the same limitation applies to claims under Title II of the ADA and the Rehabilitation Act.  *See Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 349 (11th Cir. 2012) ("*Gebser* provides the correct standard [in a Rehabilitation Act case]"); *Manuel v. City of Bangor*, 2009 WL 3398489, at *3 (D. Me. Oct. 21, 2009) (*Gebser* rule "extends to [the plaintiffs'] claim under Title II, as well, because [the plaintiffs] request monetary relief as their exclusive remedy"); *see also Fitch v. Kentucky State Police*, 2010 WL 5090323, at *1 (E.D. Ky. Dec. 8, 2010) (dismissing Title II ADA claim that was "essentially a claim based on vicarious liability for an alleged unlawful arrest by one of [the defendant's] employees").  As noted above, Plaintiff's application complaint stems exclusively from the alleged negligence of the DHS worker and the FFM representative in providing her husband with erroneous information.  The State Defendants cannot be held vicariously liable for these alleged acts.  Accordingly, Counts Four and Five must be dismissed for failure to state a claim against the State Defendants to the extent they are based on the alleged acts of their workers in failing to accept a TennCare application from Plaintiff's husband.

- 17 -

Fifth, Plaintiff cannot recover compensatory damages because the Complaint does not allege that the State refused to accept her applications or to provide her with a fair hearing out of deliberate indifference to her disability or discriminatory animus. It is well-settled that "compensatory damages are not available under Title II [of the ADA] . . . absent a showing of discriminatory intent." *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).[10] The Courts of Appeals are divided over whether the requisite level of intent requires proof of "discriminatory animus," *see Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 126–27 (1st Cir. 2003); *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574–75 (5th Cir. 2002), or if "deliberate indifference" is sufficient, *see Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001). While the Sixth Circuit has not definitively resolved this issue, *see R.K. ex rel. J.K. v. Board of Educ. of Scott Cty.*, 637 F. App'x 922, 925 (6th Cir. 2016), it has said that at least in the educational context proof of "bad faith or gross misjudgment" is necessary, *Campbell v. Board of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 167 (6th Cir. 2003). The Sixth Circuit has also ruled that intentional discrimination under the ADA requires a showing that the defendant intentionally directed the discrimination toward the plaintiff in particular. *See Anderson*, 798 F.3d at 357 (citing *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008)). Accordingly, the State submits that the better view under Sixth Circuit precedent is that "discriminatory animus" is necessary. But the Court need not resolve this issue; the Complaint's allegations are insufficient to justify compensatory damages even under a "deliberate indifference" standard.

---

[10] *See also, e.g.*, *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013); *Board of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 278 (7th Cir. 2007); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111–12 (2d Cir. 2001); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152–53 (10th Cir. 1999); *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 830 n.9 (4th Cir. 1994); *Wood v. President & Trs. of Spring Hill Coll.*, 978 F.2d 1214, 1219–20 (11th Cir. 1992); *Carter v. Orleans Parish Pub. Schs.*, 725 F.2d 261, 264 (5th Cir. 1984).

- 18 -

Accordingly, Counts Four and Five must be dismissed to the extent they seek compensatory damages.

Sixth, in addition, Plaintiff's failure to specify what accommodation the State should have provided or to allege that she requested such accommodation is fatal to her claim. *See, e.g.*, *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) (finding that an accommodation was not required until plaintiff provided a proper diagnosis and requested specific accommodation); *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) ("In cases where the alleged violation involves the denial of a reasonable modification/accommodation, the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request" (footnote, citation and quotation marks omitted)); *Frank v. University of Toledo*, 621 F. Supp. 2d 475, 487 (N.D. Ohio 2007) (*Kaltenberger* "stands for the proposition that a plaintiff must make a specific request for accommodations."); *Carney v. University of Akron*, 2016 WL 4036726, at *16 (N.D. Ohio July 28, 2016), *appeal docketed*, No. 16-3993 (6th Cir.) (finding that because allegations in complaint insufficient to establish that plaintiff requested a specific accommodation, she cannot maintain her accommodation claims); *Brown v. University of Cincinnati*, 2005 WL 1324885, at *14 (S.D. Ohio June 3, 2005) (same); *Watson v. City of Mason*, 2005 WL 3018690, at *5 (S.D. Ohio Nov. 9, 2005) (same); *cf. Wheat v. Columbus Bd. of Educ., Columbus Pub. Schs.*, 644 F. App'x 427, 430 (6th Cir. 2016) (finding in the employment context that employee has burden of proposing an accommodation and proving it is reasonable). Significantly, the notice sent to Plaintiff requesting that she identify a valid factual dispute that would justify a fair hearing, *see* Complaint ¶ 62, provides a toll free number that she could have called to seek assistance should she need it "*because [of] a health problem . . . or disability*." Letter from State of Tennessee, HealthCare Finance and

- 19 -

Administration Eligibility Appeals Unit, to M.B. (July 28, 2015), attached as Exhibit C

(emphasis added).  Plaintiff has not alleged that she needed or sought any accommodation in

order to comply with the regulations governing TennCare's administrative appeal process.  To

state a claim, Plaintiff must allege that the State could have reasonably accommodated her

disability but refused to do so, *see McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119

F.3d 453, 460 (6th Cir. 1997), and Plaintiff has not done so.

## CONCLUSION

For the foregoing reasons, Defendants submit that the Court should dismiss this case with

prejudice.

September 27, 2016                              Respectfully submitted,

Herbert H. Slatery III                         /s/Michael W. Kirk
Attorney General and Reporter                  Michael W. Kirk
                                               Nicole J. Moss

Linda A. Ross, TN BPR #4161
Senior Deputy Attorney General                 COOPER & KIRK, PLLC
Carolyn E. Reed, TN BPR #022248                1523 New Hampshire Avenue, N.W.
Senior Counsel                                 Washington, D.C. 20036
                                               (202) 220-9600
OFFICE OF THE ATTORNEY GENERAL                 mkirk@cooperkirk.com
P.O. Box 20207
Nashville, TN  37202
(615) 741-1771

                    *Counsel for the Defendants*

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served upon all counsel of record on this 27th day of September, 2016, via the Court's Electronic Case Filing system.


/s/Michael W. Kirk
Michael W. Kirk