# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| M.B., | ) | |
| | ) | |
|      **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 3:16-cv-02063** |
| | ) | |
| **DR. WENDY LONG, in her official capacity as** | ) | |
| **Deputy Commissioner of the Tennessee** | ) | **Judge Campbell** |
| **Department of Finance & Administration and** | ) | **Magistrate Judge Newbern** |
| **Director of the Bureau of TennCare, et al**., | ) | |
| | ) | |
|      **Defendants**. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

This case arises from a year-long, Kafkaesque saga reminiscent of *The Castle.* As the Plaintiff lay in a coma, the State refused efforts by her husband and hospital staff to submit a TennCare application on her behalf, insisting that only she could apply. When the Defendants finally accepted her application, they delayed the effective date so that it covered almost none of her medical expenses. Then, when the Plaintiff desperately sought to appeal, the Defendants repeatedly denied her a hearing on the grounds that she had failed to raise a "valid factual dispute." After all efforts to obtain redress from the State were rebuffed, the Plaintiffs filed this suit seeking vindication of her rights under federal laws and the Constitution.

The Defendants now demand dismissal of the Plaintiff's Complaint. They insist that the State acted according to law, and that this Court must therefore deny her a hearing, just as they did. The Court need not endorse such an unfair result, however, because the Defendants' arguments are wholly without legal merit. The motion to dismiss should be denied.

## STATEMENT OF FACTS

In January 2014, the defendant State TennCare officials closed the State's application portals to most TennCare applicants. The Tennessee Department of Human Services (DHS) stopped accepting in-person applications and eliminated the ability of applicants to get help through the DHS call center, known as the Family Assistance Service Center. (Complaint (Docket No. 1), ¶¶ 17-18, 26.) The Defendants refused to accept TennCare applications, other than applications for long term services and supports through the TennCare CHOICES program, and relegated TennCare applicants to the federally facilitated marketplace (FFM), or "Exchange." (*Id.* ¶¶ 25, 27-28, 40).

On March 20, 2015, Plaintiff M.B. fell ill and was rushed to a hospital in Springfield, Tennessee. (*Id.* ¶ 30.) Three days later, she was in a coma on life-support. (*Id.* ¶ 31.) She remained comatose for several weeks, undergoing surgery and intensive care in Nashville hospitals. (*Id.* ¶¶ 31-36).

On April 7, 2015, while the Plaintiff remained in a coma, her husband went to the Robertson County DHS office to try to apply for TennCare on her behalf. (*Id.* ¶¶ 40-41.) A DHS employee explained that DHS no longer accepted TennCare applications and referred him to the FFM. (*Id.* at 41.) Plaintiff's husband then contacted the FFM as instructed and explained that he was applying for TennCare for his wife, because she was in a coma. (*Id.* ¶ 42.) The FFM representative told him he could not apply without his wife's consent and recommended that he apply in person at his local state Medicaid office. (*Id.*) Plaintiff's husband thereafter concluded that it would be futile to try to apply for TennCare for his wife while she remained comatose. (*Id.* ¶ 43.)

Hospital staff separately attempted to submit a TennCare CHOICES application on the Plaintiff's behalf after she regained consciousness, because she remained in need of intensive rehabilitation services. (*Id.* ¶¶ 45-47.) TennCare found that Plaintiff remained so debilitated that she qualified for nursing facility care or equivalent services in her home, but she never received any CHOICES services. (*Id.* ¶¶ 48-50.)

By the time Plaintiff was discharged to her home on May 14, 2015, she had accrued nearly $900,000 in medical expenses. (*Id.* ¶ 37.) Furthermore, she still had significant ongoing disabilities requiring specialty medical care and rehabilitation, but she had difficulty scheduling follow-up medical appointments because she was uninsured. (*Id.* ¶¶ 38, 47, 49-50, 72, 82.)

On May 27, 2015, the Plaintiff was able to contact the FFM herself and submit a TennCare application, which was approved. (*Id.* ¶¶ 52-53.) The Defendants only extended coverage from May 27, 2015, however, rather than from April 7, 2015, when her husband first attempted to apply on her behalf. (*Id.* ¶¶ 52-55.) The Defendants' action left the Plaintiff with crushing medical debts. (*Id.* ¶ 55.)

Within days of being informed of the delayed effective date of her coverage, Plaintiff filed the first of what would be several state administrative appeals submitted over the next three months (*Id.* ¶¶ 55-78.) During the course of those appeals, pursuant to TENN. COMP. R. & REGS. 1200-13-19-.05, the Defendants demanded that the Plaintiff produce facts that would, at their sole discretion, satisfy them that her appeals presented a "valid factual dispute." (*Id.* ¶¶ 62, 70, 74, 80.) Plaintiff promptly provided detailed responses recounting the attempts by her husband and her hospital to apply for TennCare on her behalf. (*Id.* ¶ 71.) She documented her medical condition and hospitalization with supporting medical records. (*Id.* ¶ 66.) She explained that TennCare had approved a pre-admission application (PAE), finding that her medical

3

condition qualified her to receive nursing home care. (*Id.* ¶ 71.) She made clear that she continued to have significant ongoing disabilities that required accommodation. (*Id.* at 72.)

However, Plaintiffs' efforts were to no avail. The Defendants peremptorily denied her a hearing and closed her appeals, because, they said, she had failed to show that the appeals raised a valid factual dispute. (*Id.* ¶¶ 67, 74.)

On January 11, 2016, Plaintiff filed a petition for judicial review in the Davidson County Chancery Court, seeking judicial review of TennCare's dismissal of her multiple appeals. (*Id.* ¶ 83.) On June 30, 2016, the Chancery Court dismissed four of her five claims for judicial review as untimely under the applicable state 60-day statute of limitations. (*Id.* ¶ 84.) On July 27, 2016, she voluntarily dismissed her remaining Chancery Court claim. (*Id.* ¶ 85.) The Plaintiff filed her Complaint in this Court on August, 2016.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011) (explaining that the federal pleading standards post-*Twombly* and *Iqbal* "insist[] that pleadings be plausible, not probable"). In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v.*

4

*Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).

## ARGUMENT

I. **Plaintiff's Medicaid Act and Due Process claims are not barred by the Eleventh Amendment because she seeks only prospective injunctive and declaratory relief compelling Defendants to comply with federal law.**

Since July 13, 2015, Plaintiff has repeatedly asked Defendants to provide her with an opportunity for a fair hearing to correct the effective date of her TennCare coverage back to April 7, 2015, the date her husband attempted to submit an application on her behalf. (Docket No. 1, ¶¶ 55-58, 62-79.) Defendants have repeatedly denied her requests for a fair hearing, citing their "no valid factual dispute" policy, codified as TENN. COMP. R. & REGS. §§ 1200-13-19-.02(6), -.05(3), and -.07(5) (copy attached).   As of today, Defendants have still not provided Plaintiff with the fair hearing to which she is entitled under federal law. Plaintiff now comes to this Court seeking, in Counts One, Two, and Three of her Complaint:

(1) a declaration that Defendants' "no valid factual dispute" regulations violate both the Medicaid Act, 42 U.S.C. § 1396a(a)(3), and the Due Process Clause of the Fourteenth Amendment;

(2) an order enjoining Defendants from continuing to deny her the fair hearing to which she is entitled under federal law; and,

(3) a declaration that Defendants' refusal to timely accept and process Medicaid applications on her behalf, when attempts were made both in person and by a family member authorized by federal law, violates her rights to apply for medical assistance without delay in violation of 42 U.S.C. § 1396a(a)(8).

5

These Counts seek only prospective injunctive relief for a continuing violation of Plaintiff's rights—Defendants' ongoing refusal to provide her with a fair hearing—and a declaration of her rights for purposes of determining the correct effective date of her TennCare coverage at a fair hearing. Such relief is permitted under the Eleventh Amendment.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court held that a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law. *See also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) ("It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."). Plaintiff is specifically seeking an injunction ordering Defendants "to conform their future conduct to the requirements of federal law" by providing her with the statutorily mandated fair hearing that they have denied her thus far. This relief falls squarely within the *Ex Parte Young* exception to the State's sovereign immunity.

Defendants argue that the *Ex Parte Young* exception does not apply to this case because Plaintiff is effectively seeking a "direct monetary award." (Docket No. 22, at p. 6, *citing Ernst v. Rising*, 427 F.3d 351, 371 (6th Cir. 2005)). This is a mischaracterization of Plaintiff's claims. Plaintiff is not seeking compensatory damages in Counts One, Two, or Three. She is seeking prospective injunctive and declaratory relief. Even if such relief has "an ancillary effect on the state treasury," it is nonetheless permitted under the *Ex Parte Young* exception. *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

In *Quern*, the Supreme Court affirmed a district court order requiring state officials to notify members of the plaintiff class advising them of the availability of state administrative procedures through which they were entitled to receive a determination of whether they are entitled to past welfare benefits. *Id.* at 334. The Court rejected the defendant's argument that

6

such relief was barred by the Eleventh Amendment because it "will lead inexorably to the payment of state funds for retroactive benefits and therefore it, in effect, amounts to a monetary award." *Id.* at 347. The Court found that the injunction simply made available to members of the plaintiff class:

> whatever administrative procedures may already be available under state law by which they may receive a determination of eligibility for past benefits. . . . [W]hether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, its courts, and legislature, not with the federal court.

*Id.* at 348. Similarly, here, Plaintiff is not asking the Court to order Defendants to provide her with retroactive benefits. Instead, Plaintiff asks only that the State make available to her the administrative procedures already provided under state law and by which she may receive a determination of eligibility for past benefits. This is entirely permissible under *Ex Parte Young*.

The relief Plaintiffs seeks is analogous to the relief this Court ordered the State to provide Plaintiffs in *Wilson v. Gordon*, 2014 U.S. Dist. LEXIS 122010 (M.D. Tenn. Sept. 2, 2014). In *Wilson*, Plaintiffs brought suit against TennCare officials for, among other things, repeatedly refusing to provide them with fair hearings when Plaintiffs' TennCare applications had not been adjudicated with reasonable promptness. *Id.* at *3. Though the State's refusal to provide fair hearings to Plaintiffs occurred in the past, this Court enjoined Defendants "from continuing to refuse to provide fair hearings" to Plaintiffs. *Id.* at *13 (internal quotations omitted). Plaintiff seeks similar relief here to what this Court granted Plaintiffs in *Wilson*, which is clearly permissible under the Eleventh Amendment.

## II. Plaintiff has standing to maintain Counts Two and Three because she is seeking relief for a continuing violation of her federal rights.

Defendants argue that Plaintiff lacks standing to pursue Counts Two and Three, which they cast as being based solely on the fact that Plaintiff might be subjected to TennCare's "no

7

valid factual dispute" rules at some point in the future, and that such a possibility is too speculative to meet the injury-in-fact requirement for standing. (Docket No. 22, at p. 6.) Again, Defendants mischaracterize Plaintiff's claims. Counts Two and Three allege that Defendants have violated, *and continue to violate*, her federal rights by denying her the fair hearing to which she is entitled under federal law. (*See* Docket No. 1, ¶¶ 93, 97.) Plaintiff has standing to maintain these claims.

Article III requires that a plaintiff suffer an "injury-in-fact" in order to establish standing. *See, e.g.*, *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015). An injury-in-fact is defined as "an invasion of a legally-protected interest" that is "concrete and particularized," traceable to the defendant's conduct, and redressable by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Both the Medicaid Act and the Due Process Clause of the Fourteenth Amendment require state Medicaid agencies to provide fair hearings to Medicaid applicants whose claim for medical assistance are denied, as Plaintiff's was here. 42 U.S.C. § 1396a(a)(3); *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard."); *Hamby v. Neel*, 368 F.3d 549, 559-62 (6th Cir. 2004). The gravamen of Plaintiff's Complaint, and the explicit basis for Counts Two and Three, is that she has been, and is being, denied a right to a fair hearing, in violation of her constitutional rights and federal law. (*See* Docket No. 1, ¶ 93 (alleging that Defendants violated federal law by refusing to give her a fair hearing); *id.* ¶ 97 (alleging that Defendants' failure to give her a fair hearing violated her Due Process rights))

Contrary to Defendants' assertions, Plaintiff does not claim a right to a fair hearing in the future merely because she, like other TennCare enrollees, must undergo an annual eligibility redetermination. Instead, her claims are based on the fact that she suffers a present, ongoing

violation of her federal and constitutional rights. As such, the cases cited by Defendants in support of their motion to dismiss Counts Two and Three based on allegations of threatened injury and possible future harm are inapplicable in this case. Instead, because Plaintiff alleges that Defendants have denied and continue to deny her a fair hearing, she has alleged an injury in fact. It is this denial that forms the basis of Counts Two and Three, and Plaintiff plainly has standing to maintain these claims.

### III. Count One is timely and states a plausible claim for relief for violations of the Medicaid Act.

#### A. Count One is not barred by the statute of limitations.

As an initial matter, Count One is not barred by the statute of limitations. "Actions premised on federal constitutional claims . . . brought pursuant to § 1983 . . . are governed by the statute of limitations in the forum state." *Pike v. United States*, 868 F. Supp. 2d 667, 679-80 (M.D. Tenn. 2012). Tennessee law provides a one-year statute of limitations for civil actions brought under the federal civil rights statutes. TENN. CODE ANN. § 28-3-104(a)(1)(B). Tennessee law also provides the opportunity for plaintiffs to take a voluntary dismissal without prejudice as a matter of course after commencing an action and, pursuant to Tennessee's savings statute, to re-file that suit within a year. TENN. CODE ANN. § 28-1-105(a); TENN. R. CIV. P. 41.01. "A savings statute allows a case that has been dismissed, for reasons other than a dismissal on the merits, to be refiled within a set period—even after the statute of limitations has run on the action." *Circle C. Constr., LLC v. Nixon*, 484 S.W.3d 914, 919 (Tenn. 2016). Furthermore, "[t]he Savings Statute operates to permit a subsequent action in federal court on the same terms as if that action were commenced in State court." *Moore v. Fields*, 464 F.2d 549, 550 (6th Cir. 1972).

In this case, Plaintiff filed a petition for judicial review in Davidson County Chancery Court on January 11, 2016, within the applicable one-year statute of limitations. (Docket No. 1, ¶

9

82.) *See* TENN. CODE ANN. § 28-3-104(a)(1)(B). Consistent with Tennessee Rule of Civil Procedure 41.01, Plaintiff filed for voluntary dismissal of her Chancery Court suit on July 27, 2016. (Docket No. 1, ¶ 84.) Plaintiff then re-filed her actions against the State in this Court in August, again well within the one-year period provided for reinitiating an action under Tennessee's savings statute. *See Moore*, 464 F.2d at 550; *Circle C. Constr.*, 484 S.W.3d at 919. Because Plaintiff's initial suit was timely, and because her Complaint in this Court was filed within the timeframe established by the savings statute, there is no statute of limitations issue here.

**B.      Count One states a plausible claim for relief.**

Count One also satisfies the federal pleading standards by stating a plausible claim for relief under the Medicaid Act. Section 1396a(a)(8) of the Medicaid Act explicitly requires state Medicaid agencies to "provide that all individuals wishing to make an application for medical assistance under the plan shall have opportunity to do so . . . ." *Id.* The federal regulations implementing § 1396a(a)(8) require state Medicaid agencies to accept applications by telephone, mail, in person, via the internet, and through "other commonly available electronic means." 42 C.F.R. § 435.907(a). Federal regulations also require state Medicaid agencies to accept applications from any applicant, an adult who is in the applicant's household or family, an authorized representative, or a person acting responsibly for a minor or incapacitated applicant. 42 C.F.R. § 435.907(a). Plaintiff alleges in Count One that Defendants refused to accept an application submitted on her behalf by her husband both in person and by phone. (Docket No. 1, ¶¶ 41-42.) She avers that the Defendants adopted the state policies that resulted in the refusal by DHS to accept her application, and in the DHS worker's insistence that her husband apply

10

through the FFM. (*Id.* ¶¶ 20-21, 25-27.) Accepting these allegations as true, Count One clearly states a plausible claim for relief.

Defendants argue that the allegations in Count One "at best establish only that worker error occurred." (Docket No. 22, at p. 9.) First, this is, again, a mischaracterization of Plaintiff's claims. Plaintiff does not allege "worker error." She alleges that Defendants refused to accept an application submitted on her behalf in violation of § 1396a(a)(8) and its implementing regulations. Defendants cannot defeat this claim at the pleading stage by simply acknowledging that the conduct alleged in the Complaint violated federal and state law and concluding that it must therefore be the result of worker error. (Docket No. 22, at p. 9: "In this case, all agree that established federal and state policy clearly does allow an authorized representative to apply on behalf of another individual. Thus, the allegations in the Complaint at best establish only that worker error occurred.") Indeed, federal law also clearly requires state Medicaid agencies to accept in-person applications. 42 C.F.R. § 435.907(a). Yet Plaintiff specifically alleges that Defendants' refusal to accept her application at the Robertson County DHS office on April 7, 2015, was the direct result of an illegal state policy of refusing to accept in-person applications: "In January 2014, . . . the Defendants closed the State's TennCare application portals to most applicants. DHS stopped accepting in-person applications . . . ." (Docket No. 1, ¶ 26.) Thus, Count One clearly states a claim for relief.

The three cases cited by Defendants do not demonstrate otherwise. Two of the cases cited by Defendants involved Plaintiffs who were denied government benefits because they relied on erroneous advice given by government employees and, as a result, failed to satisfy application or eligibility requirements for such benefits. In *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990), the plaintiff sought advice from a government employee about the statutory

income limits for receiving federal disability retirement benefits and received erroneous information. Plaintiff relied on that erroneous information, earning more income than the statute allowed, and was denied disability retirement benefits. The Supreme Court upheld the denial of benefits, holding that "*erroneous advice* given by a Government employee . . . cannot estop the Government from denying benefits not otherwise permitted by law." *Id.* at 414 (emphasis added). In *Schweiker v. Hansen*, 450 U.S. 785 (1981), an applicant for Social Security benefits failed to properly comply with application requirements based on a government worker's erroneous advice. The Supreme Court held the Social Security Administration could insist upon compliance with its application requirements regardless of the employee error. *Schweiker*, 450 U.S. at 790. These cases are distinguishable because, here, Plaintiff did not rely to her detriment on the erroneous *advice* of government employees. Unlike the plaintiffs in *Richmond* and *Schweiker*, here Plaintiff complied with all of the statutory requirements to apply for Medicaid. The government employees unlawfully refused to accept an application on her behalf. Thus, the cases cited by Defendants are inapposite.

The other case cited by Defendants, *Daniels v. Williams*, 474 U.S. 327 (1986), addressed whether negligent conduct by a government employee implicated the Due Process Clause. The Supreme Court ruled that it did not. But Count One in this case alleges violation of the Medicaid Act, not the Due Process Clause. The Court's holding in *Daniels* is simply irrelevant to Count One, which plainly states a valid claim for violation of federal law.

IV.     **Plaintiff states a valid claim that Defendants' "no valid factual dispute" rules violate the Medicaid Act and Due Process.**

TennCare rules require that all TennCare eligibility appeals be dismissed, without providing the appellant an opportunity for a fair hearing or further recourse, unless the appellant demonstrates, in the sole discretion of Defendants or their agents, that the appeal raises a "valid

12

factual dispute." T‌ENN. C‌OMP. R. & R‌EGS. 1200-13-19-.05. These rules directly violate both the Medicaid Act and the Due Process Clause of the Fourteenth Amendment. The Medicaid Act requires all state Medicaid agencies to "provide for granting an opportunity for a fair hearing to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3); *see also* 42 C.F.R. § 431.220(a) (requiring state Medicaid agencies to grant an opportunity for a fair hearing to "*[a]ny* beneficiary who requests it because he or she believes that the agency has taken an action erroneously"(emphasis added)). The right to a fair hearing is, of course, also guaranteed by the Due Process Clause. *See Goldberg*, 397 U.S. at 267 ("The fundamental requisite of due process of law is the opportunity to be heard."); *Hamby*, 368 F.3d at 559-62. In *Hamby*, the Sixth Circuit held that applicants had a property interest in TennCare that triggered due process rights, including the right to a "meaningful hearing," when their application was denied. *Hamby*, 368 F.3d at 559-62.

The State argues that 42 C.F.R. § 431.220(b) authorizes it to deny hearings to individuals whose appeals it determines do not raise a valid factual dispute. That regulation, however, only permits TennCare to deny fair hearings "if the sole issue is a Federal or State law requiring an automatic change adversely affecting some or all beneficiaries." *Id.* Plaintiff's case does not involve an "automatic change adversely affecting some or all beneficiaries," and the State does not argue otherwise. Thus, this exception to the general rule that Medicaid agencies must provide individuals with an opportunity for a fair hearing does not apply in this case.

The State argues that the Sixth Circuit upheld TennCare's "no valid factual dispute" rules in *Rosen v. Goetz*, 410 F.3d 919 (6th Cir. 2005) (*Rosen II*). *Rosen II*, however, involved a challenge to the State's procedures for automatically eliminating three of the seventeen

13

TennCare eligibility categories and for disenrolling 323,000 beneficiaries from the program. *Id.* at 922. The 2005 TennCare cuts at issue in *Rosen II* were exactly the type of "automatic change adversely affecting some or all beneficiaries" to which 42 C.F.R. § 431.220(b) applies. By contrast, the facts that Plaintiff sought in vain to raise by appeal were unique to her and were unaffected by a change in law affecting other individuals. Defendants' attempt to apply the very specific exemption in *Rosen II* to the "no valid factual dispute" rules would expand this exception to apply to *every appeal*, regardless of whether the "sole issue" in the appeal is an "automatic change adversely affecting some or all beneficiaries." This undermines the "broad right to an evidentiary hearing" guaranteed by 42 C.F.R. § 431.220(a). *Rosen II*, 410 F.3d at 926 ("The regulations grant a broad right to an evidentiary hearing (when a recipient believes that the agency has 'taken an action erroneously' in terminating benefits, § 431.220(a)(2)), . . . ."). Thus, Plaintiff states a valid claim that the State's "no valid factual dispute" rule violates federal law.

## V.     Plaintiff states a valid due process claim because she is directly challenging the adequacy of the State's post-deprivation remedy.

Defendants argue that Plaintiff's procedural due process claim is barred under the so-called *Parratt* doctrine, which states that a court may dismiss a procedural due process claim based solely on the random, unauthorized conduct of a state actor so long as an adequate post-deprivation remedy exists. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) (reaffirming the doctrine articulated in *Parratt v. Taylor*, 451 U.S. 527 (1981)). "Courts may dismiss a procedural due process claim if the state provides an adequate postdeprivation remedy and (1) the deprivation was unpredictable or 'random'; (2) pre-deprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 907 (6th Cir. 2014) (internal quotations omitted). Defendants' argument fails because Plaintiff's

14

Complaint clearly alleges that (1) the deprivation of property right to Medicaid benefits was not unpredictable or random, but rather was the result of an established state policy of refusing to accept applications in person; and (2) that the State's post-deprivation process was not adequate. Thus, Plaintiff states a valid procedural due process claim.

The Sixth Circuit has decisively and repeatedly held that the *Parratt* doctrine does not apply "where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized conduct." *Mitchell v. Fankhauser*, 375 F.3d 477, 483-84 (6th Cir. 2004); *see also Logan v. Zimmerman Brush Co*, 455 U.S. 422 (1982) (explaining *Parratt* only applies to cases involving random and unauthorized conduct). Contrary to Defendants' repeated assertions that the State's refusal to accept a TennCare application submitted on her behalf was the result of "worker error" or "unpredictable and unauthorized actions by government employees" (Docket No. 22, at pp. 9, 11, 16), Plaintiff's Complaint alleges that she was deprived of her property interest in Medicaid benefits by established state policy: "In January 2014, in defiance of federal Medicaid law, the Defendants closed the State's TennCare application portals to most applicants. DHS stopped accepting in-person applications . . . ." (Docket No. 1, ¶ 26.) Thus, *Parratt* does not apply.

With no acknowledgement of the irony, the Defendants argue that the state's post-deprivation remedies – which they adamantly refuse to afford the Plaintiff – are adequate to defeat her due process claims. The Complaint describes in detail how, for a period of several months, Plaintiff repeatedly attempted to appeal her effective date of coverage using the state's administrative appeals procedure. (Docket No. 1, ¶¶ 55-81.)  Over those months, state employees failed to properly log her appeals, denied her the ability to appeal, opened new appeals when she attempted to respond to requests for more information in existing appeals, and failed to explain

15

to Plaintiff what factual information was purportedly lacking from her appeal. The Defendants ultimately denied Plaintiff her constitutional right to a fair hearing regarding the effective date of her TennCare coverage, based on an alleged failure to raise a valid factual dispute, and they failed to inform her of her right to seek judicial review of that denial. (*Id.*) With these allegations, Plaintiff has more than satisfied her burden at the pleading stage of demonstrating that, as applied, the state's administrative appeals procedure for post-deprivation relief has been entirely inadequate. Defendants cannot succeed on a motion to dismiss by simply asserting that Plaintiff is wrong and that the State's procedures are adequate. Therefore, Defendants' motion to dismiss on these grounds should be denied.

## VI. Plaintiff states claims for relief under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

### A. Plaintiff's ADA and Rehabilitation Act claims are not barred by the statute of limitations.

Defendants argue that Plaintiff's ADA and Rehabilitation Act claims are barred by the one-year statute of limitations on such claims. However, as with Plaintiff's claim for Defendants' violation of the Medicaid Act's "reasonable opportunity to apply" provision, discussed in Section III above, these claims are timely under Tennessee's savings statute. Though Plaintiff's petition for judicial review in Chancery Court did not allege claims under the ADA or Rehabilitation Act, the savings statute does not require that the later complaint be identical to the earlier one, only that "the allegations arise out of the same transaction or occurrence." *Howell v. Claiborne & Hughes Health Ctr.*, 2010 Tenn. App. LEXIS 400, at *17-18 (Tenn. Ct. App. June 24, 2010), *overruled on other grounds by Myers v. Amisub (SFH), Inc.*, 382 S.W.3d 300, 310 n.10 (Tenn. 2012); *see also Energy Sav. Prods., Inc. v. Carney*, 737 S.W.2d 783, 784-85 (Tenn. Ct. App.1987) (holding that the savings statute was applicable to the second complaint, which

16

had been amended to add a new claim, because the claim arose out of the same conduct, transaction, or occurrence alleged in the original action and the plaintiff, therefore, could have added the claim to the first action under Tenn. R. Civ. P. 15).

Plaintiff filed a petition for judicial review in Davidson County Chancery Court on January 11, 2016, within the applicable one-year statute of limitations for ADA and Rehabilitation Act claims. (Docket No. 1, ¶ 82.) *See* TENN. CODE ANN. § 28-3-104(a)(1)(B). The allegations in that petition and the allegations in her Complaint in this action arose out of the same transaction or occurrence, namely Defendants' refusal to accept and process an application submitted on her behalf while she was in a coma. She filed for voluntary dismissal of her Chancery Court suit on July 27, 2016. (Docket No. 1, ¶ 84.) Plaintiff then re-filed her actions against the State in this Court in August, again well within the one-year period provided for reinitiating an action under Tennessee's savings statute. *See Moore*, 464 F.2d at 550; *Circle C. Constr.*, 484 S.W.3d at 919. Because Plaintiff's initial suit was timely, and because her Complaint in this Court was filed within the timeframe established by the savings statute, Counts Four and Five are not time-barred.

### B. Plaintiff specifically alleges that she had significant disabilities when she was seeking a fair hearing.

Defendants argue that Plaintiff does not state a claim under the ADA or the Rehabilitation Act based on the State's refusal to provide her with a fair hearing because "she has not plausibly alleged that she had a disability at the time her administrative appeals were adjudicated." (Docket No. 22, at p. 14.) This is incorrect for a number of reasons.

First, Plaintiff directly alleges that she had significant impairments at the time she was seeking a fair hearing. The Complaint alleges that on September 18, 2015, Plaintiff notified TennCare "that she continued to have significant disabilities that required accommodation."

(Docket No. 1, ¶ 72.) Moreover, the day before she was released from the hospital, TennCare approved her Pre-Admission Evaluation (PAE) for the TennCare CHOICES program. (Docket No. 1, ¶¶ 44-49.) That is, Defendants determined that Plaintiff was so impaired in her activities of daily living that she qualified for care *in a nursing facility*. Defendants are simply mistaken that Plaintiff's impairment had been corrected when she was seeking a fair hearing.

Moreover, when she was seeking a fair hearing to correct the effective date of her TennCare coverage, Plaintiff repeatedly made it clear to Defendants that she was in a coma[1] at the time Defendants refused to accept an application on her behalf. (*See*, *e.g.*, Docket No. 1, ¶¶ 71-72.) She even provided Defendants with medical records and case studies regarding her condition in her attempts to obtain a hearing. (*Id.* ¶ 66.) Despite Plaintiff's efforts, Defendants repeatedly denied her request for a fair hearing because they determined that her disability at the time of her attempt to apply did not raise a valid factual dispute. This is itself a violation of the ADA and Rehabilitation Act, even if Plaintiff had not had a disability when she was seeking a fair hearing. *See* 42 U.S.C. § 12102(2) (defining "disability" to include "a record of such impairment" in the past); 29 C.F.R. § 1630.2(k)(3) (in the employment context, the ADA entitles individuals "with a record of a substantially limiting impairment . . . to a reasonable accommodation if needed and related to the past disability"). Thus, Plaintiff states a claim that the Defendants' refusal to provide her with a fair hearing violated the ADA and the Rehabilitation Act.

---

[1] A coma clearly satisfies the definition of a disability under both the ADA and the Rehabilitation Act. *See* 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(20(B) (both defining "disability" as "…a physical or mental impairment that substantially limits one or more major life activities").

18

### C. Plaintiff plausibly alleges that Defendants denied her an opportunity to apply for TennCare and an opportunity for a fair hearing "by reason of" her disability.

To state a claim for relief under Title II of the ADA and Section 504 of the Rehabilitation Act, Plaintiff must plead that (1) she is a person with a disability under the Act; (2) that she is "otherwise qualified" for participation in the program; and (3) that she was excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Defendants argue that Plaintiff cannot satisfy the third element because she does not plausibly allege that the State acted or failed to act "by reason of" her disability. (Docket No. 22, at p. 16.)

Defendants' refusal to provide reasonable accommodations for Plaintiff's disability, such as accepting an application from her husband while she was in a coma or by providing her with a fair hearing to correct their earlier failure to accept an application on her behalf, is necessarily discrimination "by reason of her disability." *See Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 256-57 (1st Cir. 2000) (holding that "any failure to provide reasonable accommodations for a disability is necessarily 'because of a disability'—the accommodations are only deemed reasonable (and, thus, required) if they are needed because of the disability . . ."). Once a Plaintiff alleges that a covered entity has failed to provide reasonable accommodations, no further allegations of discriminatory animus are necessary. *Id.* Thus, a public program that knows an individual has a disability yet fails to make accommodations that would allow the individual to participate in or receive the benefits of the program violates Title II and Section 504. *Id.*; *see also*, *e.g.*, *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 681 (5th Cir. 1996) ("The term 'discriminate' [in the context of the ADA] includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . .

. .”); *Nadler v. Harvey*, No. 06-12692, 2007 U.S. App. LEXIS 20272, at *4 (11th Cir. Aug. 24, 2007) (“[A] failure to make reasonable accommodation claim requires no animus and occurs when a covered entity fails to fulfill its affirmative duty to ‘make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability’ without demonstrating that ‘the accommodation would impose an undue hardship on the operation of the business.’”) (quoting 42 U.S.C. § 12112(b)(5)(A)).

Defendants argue, however, that Plaintiff still fails to state a claim because she failed “to specify what accommodation the state should have provided or to allege that she requested such accommodation.” (Docket No. 22, at p. 19.) This is simply incorrect. Plaintiff alleges that her husband asked that Defendants accept a TennCare application in person or by phone on her behalf from him while she was in a coma. (Docket No. 1, ¶¶ 41-42.) Accepting a TennCare application from him on his wife’s behalf while her disability prevented her from applying on her own behalf *was the accommodation he was requesting*. Defendants and their agents denied his requests for this accommodation, explaining that “DHS no longer assists with TennCare and that the office would not take his application for medical assistance,” (*Id.* ¶ 41), and that “he would not be allowed to file an application on his wife’s behalf without her consent.” (*Id.* ¶ 41.) These were both refusals to provide reasonable accommodations for Plaintiffs’ disability. Similarly, when Plaintiff was seeking a fair hearing, she “made clear that she continued to have significant ongoing disabilities that required accommodation.” (*Id.* ¶ 72.) Providing her with a fair hearing would have constituted a reasonable *ex post facto* accommodation of Plaintiff’s disability at the time of her attempted application, as well as a reasonable accommodation of her ongoing disabilities. Defendants’ refusal to provide her with a fair hearing was a denial of reasonable accommodations for her disability and thus a violation of Title II and Section 504.

Defendants further argue that Plaintiff's claim for compensatory damages fails because she "does not allege that the State refused to accept her applications or provide her with a fair hearing out of deliberate indifference or discriminatory animus." (Docket No. 22, at p. 18.) Again, however, once a plaintiff alleges that a covered entity has failed to provide reasonable accommodations, no further allegations of discriminatory animus are necessary. *Marcano-Rivera*, 232 F.3d at 256-57. Plaintiff alleges that she repeatedly informed Defendants about her disability and requested reasonable accommodations of those disabilities to allow her to receive TennCare benefits from the date her husband attempted to apply on her behalf. Despite their knowledge of her disability, Defendants repeatedly refused to provide her with the requested accommodations. At the pleading stage, these allegations are sufficient to justify compensatory damages.

### D. Plaintiff's ADA and Rehabilitation Act claims do not rest on a theory of vicarious liability.

Defendants argue that Plaintiff's ADA and Section 504 claims fail because they "rest upon a theory of vicarious liability—a doctrine that is not available under either statute." (Docket No. 22, at p. 17.) This argument is again based on Defendants' assertions, unsupported by any actual allegations in the Complaint, that Defendants' unlawful refusal of Plaintiff's TennCare application "stems exclusively from the alleged negligence of the DHS worker and the FFM representative in providing her husband with erroneous information." (*Id.*) Plaintiff's ADA and Rehabilitation Act claims are not based on a theory of vicarious liability, just as her claim for Defendants' violation of the § 1396a(a)(8) "right to apply" provision was not based on any allegation of worker error. Instead, Plaintiff alleges that Defendants' have promulgated and enforced the regulations that permit State actors to refuse to accept and process TennCare applications in violation of the ADA and Rehabilitation Act. (Docket No. 1, ¶¶ 17-18, 25-28,

102, 107). Defendants are thus *primarily* liable for the State's resulting ADA and Rehabilitation Act violations. These allegations are sufficient to state a claim for relief.

**CONCLUSION**

For the foregoing reasons and based on the entire record in this action, Plaintiff respectfully requests that Defendants' motion to dismiss be denied.

Dated: October 25, 2016

Respectfully submitted,

 /s/ *Jeff H. Gibson* _____ _____
Jeff H. Gibson (26321)
BASS, BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200

Christopher E. Coleman TN BPR 24950
Megan A. Metcalf, TN BPR 34359
Gordon Bonnyman, Jr. TN BPR 2419
TENNESSEE JUSTICE CENTER
301 Charlotte Avenue
Nashville, Tennessee 37201
Phone: (615) 255-0331

*Counsel for Plaintiff*

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2016, a true and exact copy of the foregoing has been served upon all counsel of record via the Court's electronic filing system.

**Carolyn E. Reed**
**Linda A. Ross**
Tennessee Attorney General's Office
PO Box 20207
Nashville, TN 37202
(615) 532-9632
Carolyn.Reed@ag.tn.gov
Linda.Ross@ag.tn.gov

**Michael W. Kirk**
**Nicole J. Moss**
Cooper & Kirk
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600
mkirk@cooperkirk.com
nmoss@cooperkirk.com

/s/ *Jeff H. Gibson*

23